Case is number 24-14146, Joe Kennamer v. City of Guntersville, Alabama et al. Joe Kennamer, whenever you're ready. Good morning, your honors, and may it please the court. My name is Joel Kennamer. I'm the plaintiff appellate pro se. This case is based primarily on the Constitution of Alabama, section 9401, where it was misused by the defendants to transfer some property that belonged to the public to a private corporation. Now, Mr. Kennamer, you've raised a lot of issues in your brief, but aren't some of them issues that we can't revisit? For example, how to interpret section 94.01 of the Alabama Constitution. The Alabama Supreme Court has ruled on that issue, and we take our lead from the state courts in interpreting state law. I'm not talking about your federal claims. Right. But I just don't see a way to second-guess what the Alabama Supreme Court said about the Alabama Constitution, even if we thought it was mistaken. Well, they were mistaken. They erred. I take you at your word. Assuming that's true, I don't think we have any basis to say otherwise on state law grounds. Well, you have the authority under the Grable Doctrine to visit state law that violates constitutional rights. That's a different argument. One of your arguments is that the Alabama court simply misinterpreted section 94.01, and I'm not sure we can— Well, the district court also took that moniker up as his reason for dismissing. See, that's a due process. They violated my due process by not holding a referendum. So, in 94.01B of the Constitution, it plainly says that this 94.01 does not override the requirement for a referendum. So, the state court erred, and the district court erred. But here's the main overriding factor in all of this. This property was public property bought and paid for by the citizens of the town. But the main thing was it was in use by the citizens at the time of the transfer. In the public policy of the state of Alabama, and as far as I know of the United States, if public property is in use, there's no authority to alienate that property until the public use ceases. And it had not ceased. That's undisputed. So, I was denied due process because they didn't hold a referendum. If they had held a referendum that was required by state law, Title 35.4-14, then there would have been, you know, the people would have decided the fate of their property. And the people, and me as plaintiff, did not get that opportunity. But there's other state law that says that this was unlawful. To put private projects, you have to kind of think about it. And then we'll, a private shopping center, bars, restaurants, condos, cigar bars, on my public property. That's what they did. They took it. And without authority, there's no authority in state law for a private project on municipal property. There's no authority because it was in use, but the district court did not accept my facts. Now, when public property is in use, there's no authority to alienate that property, confirmed in Anderson v. Adams, Alabama Supreme Court. And that's in all of my filings. That is, that is the very, that tells the story. Anderson v. Adams said, in spite of the fact that you made ordinances, declared that this property is no longer needed for public or municipal use, there is no authority because it was in use. Anderson v. Adams. And they made three ordinances on this one parcel, where also the state of Alabama says that there are no projects to be on municipal land. That's in 11-54-48 of the code. But when they made these ordinances, Your Honor, they lied. They said this property is no longer needed for public or municipal purposes, and it's surplus, and there were people using it. That's in my exhibits. In my exhibits show plainly crowds of people using that at times. At times it was just a family picnicking on the grass, on the lawn, that's now covered with asphalt and bars and condos. Weren't those arguments presented by you to the Alabama Supreme Court? The argument that we— That this was improperly done because the land was in public use. They didn't follow the Alabama statutes that required them to follow certain steps and procedures. They didn't do the referendum, and the Alabama Supreme Court said none of that really matters under its interpretation of 94.01. So what's left for us on state law grounds to review? Due process. Right, those are your federal claims. I understand those, but you keep—I mean, I know you're representing yourself, but you keep saying that Alabama, the Alabama courts got Alabama law wrong. I'm not sure that's something we can decide in this case. As I read the Grebel Doctrine that you might be able to do that, and in your own courts you have said that something newly introduced, if it's in the public interest and is of great public importance, you can hear that. Now— So what, in your view, what did the Alabama authorities need to do to provide you with due process with regards to the alienation of this piece of public land? Held a referendum. Okay. Now, what should have been done, we didn't get a trial to get all there. You know, we did the best we could briefing. Now, I had attorneys in the state courts, in the state court. Couldn't—didn't have attorneys in this court. Couldn't find them all. But anyway, it all boils down back to the fact you—public property, owned by the public, bought by the public, to go to a private use. It's just unconstitutional. It's not allowed in the Alabama courts. Primarily in the Alabama court, we were claiming that retail was not allowed on public property. And we were right. But they ruled it was. Because it said commercial. But when you study the Wallace and Cater Act, given in 1154 of the Alabama Code, that's not the case. So, and another thing, sir, your honor, the Alabama League of Municipalities, whom one of the defendants was a president of the board, asked the court through a friend of the court, sued, asked the court to dismiss the case. Now, they represented every city and town in Alabama. And here they're asking the court, when one of the defendants was the president of the board of the Alabama League of Municipalities, asking them to dismiss this case. And they did. They ruled affirmed. So, the the ordinance were unconstitutional from the start. When it said this property is no longer needed. The Alabama courts themselves had ruled that that's, until it's abandoned by the public, they have no authority to dispose of the property.  concerning statutes applied incorrectly, the Alabama Supreme Court has stated contracts which depend upon it for their consideration are void. Now, that's deeds and leases. But this whole matter, I probably can't do it justice, but it's just a common sense case. The property belongs to the public. And until they abandon it, or until a referendum is held, they decide to abandon it. There's no authority for corporate headquarters. The fellow's got his corporate headquarters on the property, bars, condos. This was green park property. Now, whether it's a park, by definition, or whether it's other recreational property. Primarily, that's all municipal property is. It's either municipal use or it's recreational use. And municipalities cannot purchase property without serving some public use. They don't have implied authority or expressed either. All right, Mr. Kennery, you've used up your time, but we want to give you the time you save for rebuttal. All right. Thank you very much. Mr. Burgess. Good morning. May it please the court. I'm appearing on behalf of the city and Mayor Dollar. At its core, this case is about the authority of the city to lease or sell public property for commercial development purposes. Can I ask you a question just without violating any confidences? Can you tell us a little bit more globally about what's going on here? Because I'll have to say that Mr. Knammer, to the extent that he is pointing at some common sense notion that something here just kind of smells. I agree with him. Something here kind of smells. Like, how is it that Lawlor gets the land for $10 when it's gotten, you know, a valued, you know, $2.2 million, somebody's offering to pay hundreds of thousands of dollars for it? Why the transaction for $10? I don't know. You don't know? No. I mean, I had no involvement in the case when that happened. I don't know how he came. I know he bid on it, but I don't have any other details about that. Okay, well, color me skeptical. So, Mr. Knammer, as this Court knows, has already challenged the legality of City Harbor once, and he did not prevail. He lost in the trial court. He lost on appeal. This case, our position, is nothing more than a repackaging of the same legal dispute using claims with different labels. The City Harbor has been transformational for the city, economically and socially, for the city, its residents, and for tourists. With all due respect to Mr. Knammer, in no way, shape, or form does the existence of City Harbor violate his federal constitutional rights or otherwise wrong him civilly. The fact of the matter is that there are multiple, overlapping alternative grounds for why his claims were dismissed and for why the trial court was correct in dismissing them. Those grounds include statute of limitations, race judicata, collateral estoppel, and other claim-specific, merits-based defenses. Our brief thoroughly addresses all of those issues, and on page six, we've even got a chart that lays out why we think the district court got it right, count by count. Do you think he has standing for some of his claims as a municipal taxpayer? We have not challenged standing below. I do not think he has flat standing on the basis of the misuse of taxpayer funds. We believe that district court got that correct, but we have not challenged standing on the other claims that he's made. That's it. But in the interest of respecting this court's time, we're happy to stand on our briefs unless the court has any specific questions for me. My understanding of the record is that there was another developer wanting to develop on the exact same terms, but was willing to pay over $2 million for the property. What is the conceivable rational basis for giving the property to somebody else for a nominal amount of money? Right. So we believe that 94.01 allows the city to do that. What I would say to that, Your Honor, is that the ordinance or the resolution that laid out why the city was doing it, and it was to promote tourism, it was to promote economic development, it was to increase its tax base, and all of those would be, I would think, easily satisfy our legitimate government objectives and would easily satisfy the rational basis. Yes, but if another developer was going to develop on the exact same terms except pay $2 million, I don't understand your argument. Because the economic development would still ensue in all the same ways, wouldn't it? Well, our position would be that the city has the discretion to award the contract in the manner in which it sees fit. Is the challenge here to the ordinance that authorized the sale or to the sale? I interpret it as to the lease and the sale. There's the 2019 transaction, there's the 2023 transaction. I do know that Mr. Kinnimer has argued, at least in his Rule 59e motion, that the ordinances were unconstitutional, but I believe Judge Proctor correctly concluded that those were raised for the first time and were not available to him. I mean, the reason I ask is because, I guess, I had thought that the challenges here were to the ordinances that authorized... I think the ordinance that authorized the lease is time-barred. But as to the 2023 ordinance that authorized the sale, I thought the challenge was to the ordinance itself, not so much the sale. And the reason I raise this is because I think as soon as you say sale, you're walking right into Judge Pryor's question, very good question. Well, that seems goofball, bonkers town, to give up $2.2 million for $10. Right. I guess in terms of the claims that were made, I have not distinguished between the sale and the ordinance that authorized the sale, in my mind. The reason I ask is that the ordinance doesn't set terms for a sale. It's the terms of the sale that are goofy. The ordinance authorizing a sale, the use of this property for private purposes or whatever, isn't irrational. But the sale itself may look kind of irrational. I think that when you were looking at this through the lens of rational basis, which is a very, very low standard, I think it satisfies that. Because? Sir? Because? Because... It satisfies it, why? Because it was done to promote tourism, increase the tax base, and to promote economic development, all of which is happening right now. Despite the fact that the city left potentially millions of dollars on the table to achieve the same result. See, you see, rationality, as you say, is a really low bar. But when you give a government decision maker options A and B, and both A and B achieve the same result, and the government gets $2 million under A, $10 under B, and they choose B, it raises the antenna. You don't think so? I hear the court's question. I think that there were some... Is there anything in the public record? Not that I'm aware of. Decrees, statements, committee meetings, commission hearings that explain why the city did what it did. Not that I'm aware of. That's a good way to run a municipality. Put nothing on the record, potentially help a crony or an ally, sweep it all under the rug, and then say it's all rational. You understand why there's some concern at this? It may not be a reversible error, but you understand why there's some concern on this side of the table, even presented with a rationality argument? A hundred percent, Your Honor. Let's talk about his claim that a referendum was required, and whether or not the Alabama Supreme Court's decision in the earlier lawsuit says anything about that issue. Tell me about that argument. So, Mr. Kinnamer's argument that 354410 required a vote, that argument goes away because it is trumped by the Constitution, and therefore it does not apply. 94.01 trumps it. The Alabama Supreme Court said so. Right, and then his follow-up argument, which he presents in his brief, and he presented below, which if that's the way Alabama law works, I've been denied due process. Because you can't just give away public land without a real municipal purpose, and you need some sort of process, and I as a taxpayer and a resident was shut out. So what's the response to that fallback argument? So if we're talking about procedural due process, then we're talking about notice and an opportunity to be heard. All of this happened at a public meeting, public meetings. He attended at least one of them that I know of. So that was his due process. His constitutionally adequate process was to attend at the meetings and voice his objection, and he did. And I would further add that I think his due process was served by his first lawsuit. That's what I would say. Okay. We have a case that says that you may have a substantive due process claim when your state-created rights are infringed or eliminated by a legislative act. Right? So how does that play into what happened here? He says he has a state-created right to the enjoyment of this public property, and it was taken away by a series of legislative acts. I think Judge Newsom is right that the first set of things are time-barred, but not the latter. So how does that theory map on the issues here? I want to answer that two ways. I think inextricably intertwined with every single one of his claims, including the 1983 substantive due process claim, central to it is whether or not the city had the legal authority to do what it did. And that question was answered even by Ken Emmer I. So I don't think he can prevail on any of his claims based upon the 2023 transaction, because that has been held by the virtue of the doctrine of collateral estoppel. But more specifically to your question, Judge, I think we still come back to asking whether or not there was a rational basis for what the city did. And since it is such a low bar, and we have economic development and promoting tourism and increasing the tax base, I think it satisfies that. Do you have anything else for me? All right. Thank you very much. Thank you. Mr. McLaughlin. Yes, sir. Good morning.  May it please the Court, I represent the Lawler Defendants, the hotels, which owns the hotel, Lakeside Investment, which owns everything else that is at the Harbor Project. The Lawler Defendants either own or lease all the property at issue. In this case, some was leased on 40-year terms. Others were purchased for $10, as you pointed out. Do you have any light to shed on how we got to $10? Instead of $2.2 million? Yes. The city, from the appearance, it looks as though, oh, we just handed property to Mr. Lawler. And I agree. I think that would be egregious for the taxpayers of the city. What you're not focusing on or what's being left out is the development itself. The city spent no money building this pier, this harbor development, these expensive shops, the restaurants, the access, the marina. And one of the things I wanted to point out, I was going to say it at the end, but let me say it now. There's no gate around this property. There's no admission now. You can still fish. You can still go to the harbor. I would actually, and I'm not a big supporter of the harbor, but on the other hand, you can actually probably access more property in that area than you could before this was developed. It's open to the public. Yes, there are retail developments there, but the point is Lawler built that out of his own pocket, out of his own company. The city paid nothing. And just so I understand, was the potential deal on the table with the $2.2 million investor, was the city going to have to go out of pocket to build the marina itself on that deal? We don't know what he was going to do. By the way, the offer was $650,000. Oh, yeah, you're right. So an appraised value of $2.2 million. That's right, early on. Yeah, $650,000 was offered at a public meeting. It was very well attended. It's a small town. It was across the street from my law office. The city hall was full. I went myself. Both Mr. Lawler's proposal was on the table. Mr. Long spoke for Long Development, and that's why I know the $650,000 was the figure. It's in the record as well, but I heard it offered that deal. Yeah, you're right about that. But there was no further plan. In other words, it wasn't $650,000 and I'll do this to build the harbor, $650,000 and then I'll go have these with the city. I don't know. There was never any proposal for the actual building of anything else. That's why you're not comparing apples to apples. There's an apple to orange comparison to say, well, gee, that looks like Lawler made out like a bandit. I'll back up to what Mr. Burgess said on behalf of the city. 94.01 may not be beautiful. There may be things that we disagree with when the city council approves it, but the city council followed procedural due process and followed the rules of 94.01. And the answer, in my opinion, is the ballot box. It should be noted that everyone who was challenged at the last mayor's race last summer lost, except for the mayor. It was a very close race. But if there was a feeling among the city, the city made a stupid decision or a poor decision or a decision that was not best for the city, vote those people out of office. They did follow 94.01. And I think all the arguments that relate back to 94.01, all roads lead to 94.01. If you discredit the actions of the city of Guntersville in this case, then you're setting aside every economic development program in Alabama, whether it's under 772 or a garden variety industrial incentive park. Can I ask you a blocking and tackling question about this case? So tell me if I've got this right. So in 2000, property is acquired by owner domain, right? The plan at the time was to use it as a public boat dock and public recreational park. Then tell me this is the part that I'm interested in. Do I have it right that in 2018, I should have asked Mr. Burgess this, the city got a declaratory judgment to amend the condemnation so that the property could be used, quote, for any lawful purpose without restriction? That's right. No, you're right. And has that declaratory judgment been challenged? That declaratory judgment was not challenged. No, sir. And the original proceeding was in probate court. It was a condemnation action against CSX. It was akin to a quiet title. Ultimately, there was a settlement where the city paid CSX $50,000, cleared title to the strip. It's an interesting spot. I know I'm out of time. It's where the old railroad used to cross the river. There was just a split of land about 50 feet wide that went down from the 600-foot contour, which is a TVA level in Guntersville, down into the river. Not big enough to do anything on. You could hardly turn around a car. But that is the land that was acquired in that action. And the conveyance said it was for a park. And the city came back and said, wait a minute, we don't want to be restricted to a park. That's the declaratory judgment action you're talking about in 2018. Okay, that's helpful. Thank you. Brian, thank you very much. Thank you, Your Honors. The subject he was just discussing in the case in the state of Alabama by the Supreme Court, land taken or dedicated to a public use, such as a park, cannot be diverted to inconsistent uses. That's what the Alabama Supreme Court said in a case, Douglas versus City Council of Montgomery. Number two, the $650,000 that the fellow offered at the City Council, before the City Council meeting, when they had the meeting and they were kind of discussing it, he said, I will give appraised value. That's in the minutes. I will give appraised value and I will do the same things that he would do. But, Your Honors, that's unlawful too. If one's unlawful, the other's unlawful. It was in use by the public. That is the premier standing here. If it's in use by the public, there's no authority. So, can I ask you a question? So, I was just asking Mr. McLaughlin about the 2018 declaratory judgment that authorized this land to be put to any lawful purpose whatsoever, right? And if that's not challenged, what property interests do you have that would trigger federal constitutional protections? Why would that be challenged? He ruled it's for any lawful purpose. But that was without his jurisdiction. The courts have said he didn't have jurisdiction to say that. They've already said it. It can't be deferred. This is land taken by him in the domain. And they're taken without restrictions, but the city placed their own restrictions on it when it said we're taking it for a public park and a public pier. Right quick. Taxpayer standing. The courts have said I have taxpayer standing. Massachusetts B. Mellon, you know, has municipal taxpayer standing. It's kind of like the corporate board or the corporate shareholders have the same thing. We're required to replenish the coffers of the city. So we have standing. And a referendum, by the way, a statute of limitations cannot cover up for an unconstitutional statute, which was the ordinances. Thank you very much. Thank you. Thank you all very much.